# EXHIBIT A

Case 5:22-cv-00475-JWH-KK Document 1-1 Filed 03/16/22 Page 2 of 19 Page ID #:7
Electronically FILED by Superior Court of California, County of Riverside on 01/10/2022 01:35 PM
Case Number CVRI2200131 0000007849449 - W. Samuel Hamrick Jr., Executive Officer/Clerk of the Court By Adriana Leonard, Clerk

Marty V. Miller (Bar #225049)
Law Offices of Marty V. Miller
3890 11th Street # 450
Riverside, CA 92501
Tel. (951) 289-0962
Fax: (951) 413-0027
Email: mvm@mvmillerlaw.com

Attorneys for Plaintiff
RIVEL ZAPATA

# THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

# FOR THE COUNTY OF RIVERSIDE

| | |
|---|---|
| RIVEL ZAPATA, <br><br> Plaintiff, <br><br> vs. <br><br> COUNTY OF RIVERSIDE; JAMES HAGGARD; JERRY SAPPINGTON; WALTER MENDEZ; and DOES 1-50, <br><br> Defendants. | Case No.: CVRI2200131 <br><br> **COMPLAINT FOR DAMAGES:** <br><br> 1. **42 U.S.C. § 1983;** <br> 2. **INTERFERENCE WITH EXERCISE OF CIVIL RIGHTS (CIV. CODE § 52.1);** <br> 3. **NEGLIGENCE** <br><br> **JURY TRIAL DEMANDED** |

COME NOW, Plaintiff, RIVEL ZAPATA, and alleges as follows:

I.

**PARTIES AND JURISDICTION**

1. Plaintiff, RIVEL ZAPATA is a person who, at all times relevant to this Complaint, was domiciled in California, and was an inmate at Riverside County jails.

**COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

1

02/15/2022

2.     Plaintiff is informed and believes and thereon alleges that Defendant COUNTY OF RIVERSIDE (hereinafter "COUNTY") is a municipal corporation duly organized under the laws of the State of California. Defendant COUNTY is responsible for the actions, omissions, policies, procedures, practices, and customs of its various employees, agents and agencies, including the RIVERSIDE COUNTY SHERIFF'S DEPARTMENT (hereinafter "RCSD"), and their agents and employees, and are sued pursuant to the California Tort Claims Act, California Government Code sections 910 et seq., for the acts and omissions of the individually named and fictitiously named public employees and agents, and each of them. At all times relevant to the acts alleged herein, Defendant COUNTY was responsible for assuring that the actions, omissions, policies, procedures, practices and customs of the RCSD, their employees and agents, as well as its own employees and agents, complied with the laws of the State of California and the Constitution of the United States.

3.     Plaintiff is informed and believes and thereon alleges that RCSD is the chief law enforcement agency for Defendant COUNTY. Defendant RCSD is also in charge of, and responsible for, the jail housing of all persons arrested and charged with crimes, who are awaiting trial, all persons convicted of crimes, serving a county jail sentence, and all persons charged with, or serving a sentence for, a violation of probation, parole, or post-conviction community release supervision.

4.     Plaintiff is informed and believes and thereon alleges that Defendant, JAMES HAGGARD ("HAGGARD"), is an individual domiciled in California, and was, at all times relevant hereto, employed as a correctional deputy, or Deputy Sheriff, with the RCSD.

5.     Plaintiff is informed and believes and thereon alleges that Defendant, JERRY SAPPINGTON ("SAPPINGTON"), is an individual domiciled in California, and was, at all times relevant hereto, employed as a correctional deputy, or Deputy Sheriff, with the RCSD.

6.     Plaintiff is informed and believes and thereon alleges that Defendant, WALTER MENDEZ ("MENDEZ"), is an individual domiciled in California, and was, at all times relevant hereto, employed as a correctional deputy, or Deputy Sheriff, with the RCSD.

7. At all times mentioned herein, Defendants DOES 1-20 were employed as Corrections Deputies, or Deputy Sheriffs working in the Riverside County jails, for Defendant COUNTY, and will be referred to in this Complaint as "Corrections Defendants." Plaintiff is ignorant of the true names and capacities of Defendants sued herein as DOES 1-20, inclusive, and therefore sues these Defendants by such fictitious names. Plaintiff will amend this complaint to allege their true names when ascertained. Defendants DOES 1-20 are sued individually and in their capacity as corrections deputies for the COUNTY. As part of their duties, Corrections Defendants DOES 1-20 operated the Riverside County jails by supervising inmates, opening and closing cell doors, opening and closing doors leading to jail units, conducting searches, escorting inmates to locations within the jails. By engaging in the conduct described here, Corrections Defendants DOES 1-20 acted under the color of law and in the course and scope of their employment for Defendant COUNTY. By engaging in the conduct described here, Corrections Defendants DOES 1-20 exceeded the authority vested in them as corrections deputies under the United States Constitution and as employees of the COUNTY.

8. At all times mentioned herein, Defendants DOES 21-30, were employed as healthcare providers, for Defendant COUNTY, and will be referred to in this Complaint as "Healthcare Provider Defendants." Included in those duties was providing healthcare to inmates, including providing medications, examinations, and other medical treatment. Plaintiff is ignorant of the true names and capacities of Defendants sued herein as DOES 21-30, inclusive, and therefore sues these Defendants by such fictitious names. Plaintiff will amend this complaint to allege their true names when ascertained. Healthcare Provider Defendants DOES 21-30 are sued individually and in their capacity as healthcare providers for the COUNTY. By engaging in the conduct described here, Healthcare Provider Defendants DOES 21-30 acted under the color of law and in the course and scope of their employment for defendant COUNTY. By engaging in the conduct described here, Healthcare Provider Defendants DOES 21-30 exceeded the authority vested in them as jail healthcare providers under the United States

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

3

Constitution and as employees of the COUNTY. Healthcare Provider Defendants DOES 21-30 and the other defendants have been deliberately indifferent to Plaintiff's serious medical needs. As a result of this deliberate indifference, as in this case, Plaintiff suffered injuries to his health. Healthcare Provider Defendants DOES 21-30 are being sued in their individual and official capacities.

9. Plaintiff is ignorant of the true names and capacities of Defendants sued herein as DOES 31-50, inclusive, and therefore sue these Defendants by such fictitious names. Plaintiff will amend this complaint to allege their true names and capacities when ascertained. Plaintiff is informed and believes and thereon alleges that each of these fictitiously named Defendants is responsible in some manner for the occurrences herein alleged, and that Plaintiff's injuries as herein alleged were proximately caused by the aforementioned Defendants. Defendants DOES 31-50 are sued individually and in their capacity as employees for the COUNTY. By engaging in the conduct described here, Defendants DOES 31-50 acted under the color of law and in the course and scope of their employment for Defendant COUNTY. By engaging in the conduct described here, Defendants DOES 31-50 exceeded the authority vested in them under the United States Constitution and as employees of the COUNTY. Defendants DOES 31-50 are being sued in their individual and official capacities.

10. Plaintiff are informed and believe and thereon allege that at all times herein mentioned each of the Defendants was the agent and employee of each of the remaining Defendants and, in doing the things hereinafter alleged, were acting within the course and scope of such agency and employment.

11. Venue is proper pursuant to Code of Civil Procedure sections 394 and 395 because Defendant COUNTY is located within this district, and other Defendants are located in the district.

**GENERAL ALLEGATIONS**

12. On or about February 26, 2018, Plaintiff was incarcerated in the Riverside County jail on criminal charges brought by the Riverside County District Attorney's Office.

**COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

4

13. Upon being housed in the Riverside County jail, Plaintiff was housed in "administrative segregation." Being housed in "administrative segregation," Plaintiff was subject to far more restrictive conditions than those afforded to the general jail population. Plaintiff was not allowed recreational activities, and he was only allowed out of his cell for 30 minutes per day. In addition, phone calls and visiting privileges were considerably more limited than being housed in general population.

14. In April 2018, Plaintiff was placed in "solitary administrative segregation," which had even more restrictive conditions than regular "administrative segregation." In "solitary administrative segregation," Plaintiff was not allowed out of his cell at all.

15. In August 2018, Plaintiff was representing himself in his criminal case.

16. From August 2018 through October 2018, Riverside County Sheriff's Department corrections deputies locked Plaintiff's criminal case discovery materials in a safe. Since Plaintiff was representing himself, he needed access to the discovery materials. Plaintiff repeatedly requested his discovery materials from the corrections deputies. However, the deputies would not allow Plaintiff to have access to the materials.

17. Since the corrections deputies would not allow Plaintiff to have access to his discovery materials, Plaintiff began to submit grievances complaining about being denied his discovery materials.

18. During this same time period, Plaintiff repeatedly requested to use the telephone to make collect telephone calls. Corrections deputies refused to allow Plaintiff to use the collect phone system.

19. Since the corrections deputies would not allow Plaintiff to use the collect phone system to make collect telephone calls, Plaintiff began to submit grievances complaining about being denied access to the collect phone system.

20. In addition to submitting grievances, Plaintiff also attempt to write letters to the American Civil Liberties Union ("ACLU") and civil attorney groups. Correctional deputies reviewed all outgoing inmate mail, and were thus aware of Plaintiff's efforts to seek legal assistance for the denial of his rights by correctional deputies.

21. After submitting multiple grievances, and writing the ACLU, Defendant, James Haggard, approached Plaintiff on multiple occasions and told Plaintiff that if he continued to file grievances, he would regret it. Thereafter, Plaintiff suffered a campaign of retaliation by Defendant, James Haggard, Defendants Jerry Sappington, Walter Mendez, and Corrections Defendants DOES 1-20.

22. On or about November 20, 2018, Plaintiff underwent surgery on right hand. The doctor who performed the surgery issued discharge orders, which included that Plaintiff should be scheduled for follow up examination within 10 days, Norco pain medication was prescribed for pain, and Plaintiff was to receive physical therapy for his hand.

23. Upon return to his jail housing, Plaintiff was denied any pain medication by Healthcare Provider Defendants DOES 21-30. This caused Plaintiff to submit additional grievances complaining about the denial of pain medication.

24. Healthcare Provider Defendants DOES 21-30 never returned Plaintiff to the doctor for follow up examination within 10 days. This caused Plaintiff to submit additional grievances complaining about the denial of follow up examination.

25. Healthcare Provider Defendants DOES 21-30 never provided Plaintiff with physical therapy for his hand. This caused Plaintiff to submit additional grievances complaining about the denial of physical therapy.

26. As a result of being denied any pain medication, Plaintiff suffered from extreme pain while he recovered from the hand surgery.

27. As a result of the lack of follow up examination, and lack of physical therapy, Plaintiff's hand did not heal properly, which has resulted in limitations in Plaintiff's hand mobility.

28. In January 2019, Plaintiff was returned to "administrative segregation."

29. On or about August 14, 2019, Defendants Jerry Sappington and DOES 1-20 searched Plaintiff's cell to confiscate Plaintiff's legal documents and legal boxes. During the search, Corrections Defendants DOES 1-20, handcuffed Plaintiff, with his hands behind his back, and then strapped Plaintiff to a restraint chair.

30. During the August 14, 2019, search of Plaintiff's cell, Corrections Defendants DOES 1-20 threw and scattered Plaintiff's Torah and Yarmulke on the floor. Defendants DOES 1-20 stepped on Plaintiff's Yarmulke.

31. Corrections Defendants DOES 1-20 then wheeled Plaintiff out of the room. Plaintiff stated "this is genocide; I'm going on a hunger strike." One of the Corrections Defendants DOES 1-20 angrily replied, "What did you say?" He then ordered his staff to take Plaintiff to a special cell.

32. Corrections Defendants DOES 1-20 then took Plaintiff to a safety cell. Corrections Defendants DOES 1-20 cut off Plaintiff's clothes and wrist band. Plaintiff was still handcuffed with his hand behind his back. Corrections Defendants DOES 1-20 then dropped Plaintiff face down on the safety cell floor, which was dirty and contaminated with foreign bodily fluids. Handcuffed with his hands behind his back, prone, and completely naked, Plaintiff could not move his legs due to all the time spent in the excessively tightened restraint chair. This caused Plaintiff to submit additional grievances complaining about the search, his restraint and treatment.

33. During this search of August 14, 2019, Corrections Defendants DOES 1-20 confiscated Plaintiff's prescribed medical need shoes.

34. Prior to his incarceration at the Riverside County jail, Plaintiff was in good health, and free from viral infections.

35. In September 2019, Plaintiff noticed hair and foreign substances like saliva in his kosher meals. As a result, Plaintiff was tested for Hepatitis A and Hepatitis B, which was positive. Plaintiff contracted Hepatitis A and Hepatitis B while at the Riverside County jails. This caused Plaintiff to submit additional grievances complaining about contracting viruses while incarcerated at the Riverside County jails.

36. On January 30, 2020, the World Health Organization declared COVID-19 a global health emergency.

37. On March 4, 2020, Governor Gavin Newsom declared a State of Emergency to make additional resources available, formalize emergency actions already underway across multiple state agencies and departments, and help the state prepare for broader spread of COVID-19.

38. On or about April 6, 2020, the Judicial Council of California issued Emergency Rule 9, tolling the statute of limitations for civil actions.

39. On April 14, 2020, Corrections Defendants DOES 1-20, orchestrated an assault on Plaintiff. Corrections Defendants DOES 1-20 intentionally allowed a gang affiliated inmate to exit his cell by opening the security slider door from the control boards in the control room. After this inmate exited his cell, Corrections Defendants DOES 1-20 then intentionally allowed the inmate to exit his housing unit and enter Plaintiff's protective custody housing unit security sliding door. Once the inmate was in protective custody housing, Corrections Defendants DOES 1-20 then intentionally opened Plaintiff's security slider door, allowing the inmate access to Plaintiff. The inmate then began to assault Plaintiff. Plaintiff attempted to defend himself but was immediately overwhelmed.

40.   While Plaintiff was attempting to defend himself, Corrections Defendants DOES 1-20 shot Plaintiff with a taser. The taser left deep prongs in Plaintiff's back and caused Plaintiff to defecate himself. Corrections Defendants DOES 1-20, and Defendant Walter Mendez smiled mockingly at Plaintiff. Plaintiff told Defendant Walter Mendez that Plaintiff knew that was done intentionally. In response, Defendant Walter Mendez smiled and walked away.

41.   The above-described retaliation was designed to discourage Plaintiff from submitting grievances complaining about corrections deputies violating his rights.

42.   The above-described retaliation did discourage Plaintiff from, and had a chilling effect on, submitting grievances complaining about corrections deputies violating Plaintiff's rights.

43.   On or about May 29, 2020, the Judicial Council of California amended Emergency Rule 9, tolling the statute of limitations for civil actions.

44.   As a result of being housed in "administrative segregation," and "solitary administrative segregation," Plaintiff's freedom was severely restricted in that Plaintiff had extremely limited access to a telephone, and little to no access to a law library. Plaintiff was not able to interview witnesses regarding the incidents described above. Plaintiff was not able to gather evidence regarding the incidents described above. Plaintiff was not able to search for an attorney to represent him in a civil action against the defendants.

45.   Plaintiff has exhausted his administrative remedies.

46.   Plaintiff filed timely claims for damages with Defendant COUNTY pursuant to the applicable sections of the California Government Code § 900, et seq.

47.   Defendant COUNTY rejected Plaintiff's claims.

48.   Plaintiff now brings this civil action against Defendants for the harm Defendants caused Plaintiff.

02/15/2022

# FIRST CAUSE OF ACTION
# FOR
# 42 U.S.C. § 1983

49. Plaintiff realleges paragraphs 1 through 48 and incorporates them herein by this reference as though fully set forth.

**(Conditions of Confinement – 14th Amendment – against Defendants DOES 1-20, and 31-50)**

50. 42 U.S.C. § 1983 provides that any person or persons who, under color of state law, deprives another of any rights, privileges, or immunities secured by the Constitution or laws of the United States shall be liable to the injured party.

51. Defendants failed to provide safe conditions of confinement in the Riverside County jails. The Supreme Court has recognized that officials may not be "deliberately indifferent to the exposure of inmates to a serious, communicable disease." (*Helling v. McKinney* (1993) 509 U.S. 25, 33.) This is true even when "the complaining inmate shows no serious current symptoms." (*Id*; see also *Hutto v. Finney* (1978) 437 U.S. 678, 682 (finding Eighth Amendment violation and noting incarcerated people were placed in conditions where infectious diseases could spread easily).) Failure to prevent the spread of a contagious illness constitutes deliberate indifference to a serious medical need. (See *Hutto, supra*, 437 U.S. at 682; *Gates v. Collier* (5th Cir. 1974) 501 F.2d 1291, 1300, 1303 (holding plaintiffs entitled to relief under Eighth Amendment due to, among other conditions, allowing "inmates with serious contagious diseases . . . to mingle with the general prison population"). It is well established that the Government may not "ignore a condition of confinement that is sure or very likely to cause serious illness." (*Helling, supra*, 509 U.S. at 33. See *Brown v. Plata* (2011) 563 U.S. 493, 508-09, 519-20 (affirming population reduction order and citing findings that "[o]vercrowding had increased the incidence of infectious disease" in California prisons, and that crowded living quarters "where large numbers of prisoners may share just a few toilets and showers [were] 'breeding grounds for disease'").)

52. Defendants made an intentional decision regarding the conditions under which Plaintiff was confined.

53. The conditions of confinement put Plaintiff at substantial risk of suffering serious harm.

54. Defendants did not take reasonable available measures to abate or reduce the risk of serious harm, even though a reasonable officer under the circumstances would have understood the high degree of risk involved—making the consequences of Defendants' conduct obvious.

55. As a direct and proximate result of Defendants' acts and omissions, as described above, Plaintiff contracted Hepatitis A and Hepatitis B while incarcerated in Riverside County jails.

56. As a direct and proximate result of the acts and/or omissions of Defendants in exposing Plaintiff to actual risk of immediate physical injury, Plaintiff became ill. In addition, Plaintiff has suffered injuries and emotional distress of the nature and type that reasonable persons would suffer under the circumstances alleged in this Complaint, including, but not limited to, suffering anguish, fright, horror, nervousness, grief, anxiety, worry, shock, humiliation and shame.

57. The conduct of Defendants was oppressive, and Defendants acted with reckless and callous indifference to the federally protected rights of others. As such, Defendants' actions justify an award of punitive damages in an amount to be determined at the time of trial.

**(Failure to Protect – 14th Amendment – against Defendants DOES 1-20, and 31-50)**

58. 42 U.S.C. § 1983 provides that any person or persons who, under color of state law, deprives another of any rights, privileges, or immunities secured by the Constitution or laws of the United States shall be liable to the injured party.

59. Under the Fourteenth Amendment, a pretrial detainee has the right to be protected while in custody.

60. The Defendants made an intentional decision with respect to the conditions under which Plaintiff was confined.

61. Those conditions put Plaintiff at substantial risk of suffering serious harm.

62. The Defendants did not take reasonable available measures to abate that risk, even though a reasonable officer in the circumstances would have appreciated the high degree of risk involved—making the consequences of the Defendants' conduct obvious.

63. By not taking such measures, the Defendants caused Plaintiff's injuries.

64. As a direct and proximate result of Defendants' acts and omissions, as described above, Plaintiff was assaulted by another inmate while incarcerated in Riverside County jails.

65. As a direct and proximate result of the acts and/or omissions of Defendants in exposing Plaintiff to actual risk of immediate physical injury, Plaintiff suffered physical injuries In addition, Plaintiff has suffered injuries and emotional distress of the nature and type that reasonable persons would suffer under the circumstances alleged in this Complaint, including, but not limited to, suffering anguish, fright, horror, nervousness, grief, anxiety, worry, shock, humiliation and shame.

66. The conduct of Defendants was oppressive, and Defendants acted with reckless and callous indifference to the federally protected rights of others. As such, Defendants' actions justify an award of punitive damages in an amount to be determined at the time of trial.

(Speech – 1st Amendment – against Defendants Haggard, Sappington, Mendez, DOES 1-20, and 31-50)

67. 42 U.S.C. § 1983 provides that any person or persons who, under color of state law, deprives another of any rights, privileges, or immunities secured by the Constitution or laws of the United States shall be liable to the injured party.

68. Under the First Amendment, a citizen has the right to free speech.

69. Plaintiff was engaged in a constitutionally protected activity when he submitted grievances complaining about correctional deputies violating his rights.

70. The Defendants' actions against the Plaintiff would chill a person of ordinary firmness from continuing to engage in the protected activity.

71. The Plaintiff's protected activity was a substantial or motivating factor in the defendants' conduct.

72. As a direct and proximate result of the acts and/or omissions of Defendants, Plaintiff was discouraged from exercising his right to free speech. In addition, Plaintiff has suffered injuries and emotional distress of the nature and type that reasonable persons would suffer under the circumstances alleged in this Complaint, including, but not limited to, suffering anguish, fright, horror, nervousness, grief, anxiety, worry, shock, humiliation and shame.

73. The conduct of Defendants was oppressive, and Defendants acted with reckless and callous indifference to the federally protected rights of others. As such, Defendants' actions justify an award of punitive damages in an amount to be determined at the time of trial.

(Medical Care - 14th Amendment – Against Healthcare Provider Defendants 21-30)

74. 42 U.S.C. § 1983 provides that any person or persons who, under color of state law, deprives another of any rights, privileges, or immunities secured by the Constitution or laws of the United States shall be liable to the injured party.

75. The Defendants made an intentional decision regarding the denial of needed medical care.

76. The denial of needed medical care put the Plaintiff at substantial risk of suffering serious harm.

77. The Defendants did not take reasonable available measures to abate or reduce the risk of serious harm, even though a reasonable person under the circumstances would have understood the high degree of risk involved—making the consequences of the Defendants' conduct obvious.

78. By not taking such measures the Defendants caused the Plaintiff's injuries.

79. As a direct and proximate result of the acts and/or omissions of Defendants, Plaintiff suffered physical injuries to his hand, as well as extreme pain. In addition, Plaintiff has suffered injuries and emotional distress of the nature and type that reasonable persons would suffer under the circumstances alleged in this Complaint, including, but not limited to, suffering anguish, fright, horror, nervousness, grief, anxiety, worry, shock, humiliation and shame.

80. The conduct of Defendants was oppressive, and Defendants acted with reckless and callous indifference to the federally protected rights of others. As such, Defendants' actions justify an award of punitive damages in an amount to be determined at the time of trial.

## SECOND CAUSE OF ACTION

## FOR

## INTERFERENCE WITH EXERCISE OF CIVIL RIGHTS (CIV. CODE § 52.1)

### (Against Defendants Haggard, Sappington, Mendez, DOES 1-20, and 31-50)

81. Plaintiff realleges paragraphs 1 through 48, and incorporates them herein by this reference as though fully set forth.

82. Defendants intentionally interfered with, or attempted to interfere with, Plaintiff's clearly established rights guaranteed under United States and California laws, including, but not limited to, Plaintiff's right to free speech. Moreover, Defendants intentionally interfered with, or attempted to interfere with, Plaintiff's clearly established right to protection from battery, assault, and intimidation.

83. As a direct and/or proximate result of the Defendants' unlawful conduct as alleged herein above, Plaintiff has suffered physical injury, severe emotional distress, humiliation, embarrassment, mental and emotional distress and anxiety, all in an amount according to proof at trial.

84. The aforementioned conduct by Defendants was willful, wanton, and malicious. At all relevant times, Defendant acted with conscious disregard of the Plaintiff's rights and feelings. Defendant also acted with the knowledge of or with reckless disregard for the fact that his conduct was certain to cause injury and/or humiliation to Plaintiff. Plaintiff is further informed and believes that Defendants intended to cause fear, physical injury, and/or pain and suffering to the Plaintiff. By virtue of the foregoing, Plaintiff is entitled to recover punitive damages from Defendants according to proof at trial.

85. Plaintiff has incurred, and will continue to incur, attorneys' fees in the prosecution of this action and therefore demands such reasonable attorneys' fees and costs as set by the court.

# THIRD CAUSE OF ACTION

# FOR

# NEGLIGENCE

(Against Defendants County of Riverside, DOES 1-20, DOES 21-30, and 31-50 )

86. Plaintiff realleges paragraphs 1 through 48, and incorporates them herein by this reference as though fully set forth.

87. Defendants DOES 1-20, and 31-50, owed Plaintiff a duty of care to protect him from the risk of assault by another inmate while incarcerated in Riverside County jails.

88. Healthcare Provider Defendants DOES 21-30 owed Plaintiff a duty of care to provide him with adequate medical care.

89 Defendants DOES 1-20, and 31-50, owed Plaintiff a duty of care to protect him viruses such as Hepatitis A and Hepatitis B.

90. The Defendants breached their duties owed to Plaintiff.

91. As a direct and proximate result of Defendants' acts and omissions, as described above, Plaintiff was assaulted by another inmate while incarcerated in Riverside County jails. Plaintiff suffered severe pain and permanent injury to his hand. Moreover, Plaintiff contracted Hepatitis A and Hepatitis B.

92. In addition, Plaintiff has suffered injuries and emotional distress of the nature and type that reasonable persons would suffer under the circumstances alleged in this Complaint, including, but not limited to, suffering anguish, fright, horror, nervousness, grief, anxiety, worry, shock, humiliation and shame.

02/15/2022

93. Defendant COUNTY is liable for the acts of Defendants pursuant to Government Code § 815.2(a), which provides that a public entity is liable for injury proximately caused by an act or omission of an employee of the public entity within the scope of his employment if the act or omission would, apart from this section, have given rise to a cause of action against that employee or his personal representative.

94. Defendants are liable pursuant to Government Code section 844.6(d), which provides that nothing in Section 844.6 exonerates a public employee from liability for injury proximately caused by his negligent or wrongful act or omission.

95. Defendants are liable pursuant to Government Code section 845.6, which provides that a public entity and a public employee are liable if the employee knows or has reason to know that a prisoner is in need of immediate medical care and he fails to take reasonable action to summon such medical care.

WHEREFORE, plaintiff prays judgment against defendants as follows:

1. For damages according to proof;

2. For interest as allowed by law;

3. For reasonable attorney's fees;

4. For costs of suit incurred by Plaintiff; and

5. For punitive damages in an amount appropriate to punish Defendants HAGGARD, SAPPINGTON, MENDEZ, DOES 1-20, DOES 21-30, and DOES 31-50, and deter others from engaging in similar misconduct.

DATED: January 9, 2022                                              LAW OFFICES OF MARTY V. MILLER

                                                                    By:   *s/Marty V. Miller*
                                                                          MARTY V. MILLER,
                                                                          Attorney for Plaintiff

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury in this case.

DATED: January 9, 2022                    LAW OFFICES OF MARTY V. MILLER

By:  *s/Marty V. Miller*
MARTY V. MILLER,
Attorney for Plaintiff